UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN WAYNE MCDANIELS,

                          Plaintiffs,

   -v-                                      Case No. 15-CV-6163 (KMK)

FEDERAL BUREAU OF PRISONS;               OPINION & ORDER
CLINICAL DIRECTOR DIANE SOMMER;
MS. HANSEN, R.N.; UNITED STATES OF
AMERICA,

                          Defendants.

Appearances:

Kevin Wayne McDaniels
Kershaw, SC
*Pro Se Plaintiff*

Samuel Dolinger, Esq.
Assistant United States Attorney
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      On August 4, 2015, Plaintiff Kevin Wayne McDaniels ("Plaintiff") brought this action against the Federal Bureau of Prisons ("BOP"), Clinical Director Diane Sommer ("Sommer") and nurse Celia Hansen ("Hansen," and collectively with BOP and Sommer, "Defendants") pursuant to the Federal Torts Claims Act ("FTCA") and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in connection with his medical care at the Otisville Correctional Facility ("Otisville"). (*See* Compl. 1 (Dkt. No. 2).) Plaintiff claims that Defendants violated his rights under the Eighth Amendment to the United States Constitution due to insufficient medical treatment while Plaintiff was incarcerated at Otisville. (*Id.*)

Specifically, Plaintiff alleges that Defendants "maliciously []depriv[ed] Plaintiff of proper medical attention[] [showing] deliberate[] indifference" and "completely disregard[ed] [Plaintiff's] serious medical needs," and that as a result, Plaintiff has "lost his vision . . . [and] has constant pressure [and] sharp pains on his heart from lack of oxygen." (*Id*. at 2.) Plaintiff seeks compensatory damages in the amount of $75,000 from each Defendant and punitive damages in the amount of $75,000 from each Defendant. (*Id.* at 4.) Plaintiff also requested injunctive relief and attorney's fees. (*Id.*)[1]

Defendants now bring a motion to revoke Plaintiff's in forma pauperis ("IFP") status and dismiss the case (the "Motion"). (*See* Mem. of Law in Supp. of Defs.'s Mot. To Revoke Pl.'s In Forma Pauperis Status and To Dismiss the Case ("Defs.' Mot.") (Dkt. No. 123).) For the following reasons, Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint, the documents appended thereto, and the filings that Plaintiff has submitted in opposition to the Motion, and are taken as true for the purpose of resolving the Motion. Plaintiff has been incarcerated since March 11, 2006 and has repeatedly requested that BOP address medical issues resulting from a deviated septum, a condition Plaintiff has had for over 20 years. (*See* Compl. 2.) In September 2009, BOP provided Plaintiff with a Continuous Positive Airway Pressure ("CPAP") machine, but Plaintiff claims it is ineffective in addressing his medical issues. (*Id.*) Additionally, Sommer

---

[1] In part, Plaintiff sought injunctive relief in the form of surgery. (*Id.* at 4.) The requested surgery was performed in December 2015. (*See* Letter from Plaintiff to Court (Dec. 28, 2015) (Dkt. No. 58).)

and Hansen prescribed Plaintiff nasal sprays and recommended the use of a netti pot to treat Plaintiff's symptoms.  (*Id.*)

On or about February 19, 2015, Dr. Mark Driver, an outside ear, nose, and throat ("ENT") specialist, performed a nasal endoscopy on Plaintiff.  (*Id.* at 2.)  While Dr. Driver's "Patient Plan" instructed that Plaintiff "return in one month with sinus CT images . . . for [Dr. Driver's] review," (*id.* at 6), Plaintiff asserts that a CT was never performed and that he waited more than five months for a return visit to Dr. Driver, (*id.* at 2).

In December 2015, Plaintiff underwent nasal surgery.  (*See* Letter from Plaintiff to Court (Dec. 28, 2015) (Dkt. No. 58.); Pl.'s Opp'n to Defs.' Mot. To Revoke Pl.'s In Forma Pauperis Status and To Dismiss the Case ("Pl.'s Opp'n") 2 (Dkt. No. 132).)  Despite undergoing the surgery, Plaintiff contends that he continues to experience difficulty breathing, "chest pains [and] blurry vision" due to Defendants' delay in providing the surgery, and that he is entitled to damages as a result.  (*See* Pl.'s Opp'n 3.)

B.  Procedural History

Plaintiff filed the instant Complaint on August 4, 2015.  (Dkt. No. 2.)  On August 24, 2015, Plaintiff filed a motion for an emergency injunction, moving the Court to direct Defendants to order a CT scan and to schedule an appointment for Plaintiff to see a specialist. (Dkt. No. 7.)  On August 27, 2015, Plaintiff's application for IFP status was granted.  (Dkt. No. 9.)  Defendants filed a response to Plaintiff's motion for an emergency injunction on September 11, 2015, (Dkt. No. 16), and at a hearing on September 17, 2015, the Court denied Plaintiff's Motion, (*see* Dkt. (minute entry for September 17, 2015)).  In October 2015, Plaintiff made numerous filings, including a motion to appoint a medical expert, (Dkt. No. 26), a motion for partial summary judgment, (Dkt. No. 32), and a second motion for an emergency injunction,

(Dkt. No. 35), each of which the Court denied, (*see* Dkt. Nos. 38–40).  Defendants filed their Answer to Plaintiff's Complaint on November 16, 2015.  (Dkt. No. 41.)  From November 2015 to April 2016, Plaintiff filed dozens of motions and submissions to the Court, (*see, e.g.*, Dkt. Nos. 70–72, 76–77, 82–83, 85–94, 98–115, 119–121), prompting Defendants to file the instant Motion on May 9, 2016, (Dkt. No. 122).  In a May 16, 2016 Order, the Court cautioned Plaintiff that further frivolous or legally unreasonable submissions could expose Plaintiff to sanctions under Federal Rule of Civil Procedure 11, and instructed Plaintiff against making further applications to the Court until the Court ruled on Defendants' instant Motion.  (*See* Dkt. No 127.)  Plaintiff filed his response to Defendants' Motion on July 25, 2016, (Dkt. No. 132), and Defendants filed a reply on July 29, 2016, (Dkt. No. 135).  Despite the Court's May 16, 2016 Order, Plaintiff has continued to make submissions to the Court while Defendants' Motion was pending.  (*See* Dkt. No. 141.)

## II.  Discussion

### A.  Plaintiff's In Forma Pauperis Status

#### 1.  IFP Statute

The Court granted Plaintiff's application to proceed in this case IFP on August 27, 2015.  (*See* Dkt. No. 9.)  As a result, Plaintiff has been able to proceed without the prepayment of fees.  *See* 28 U.S.C. § 1915(a)(1).  Defendants now move to revoke Plaintiff's IFP status on the ground that he has amassed at least three "strikes," requiring revocation of the status under the Prison Litigation Reform Act ("PLRA").  (*See* Defs.' Mot. 1.)

The IFP statute was "designed to ensure that indigent litigants have meaningful access to the federal courts" and accordingly, waives the prepayment of filing fees for qualifying prisoners of limited financial means.  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).  "However,

concerned by the resulting rise of an 'outsize share of [prisoner] filings' and a 'flood of nonmeritorious claims,' Congress enacted the PLRA in 1996 in order to curb abuses of the IFP privilege and ensure 'fewer and better prisoner suits.'" *Jones v. Moorjani*, No. 13-CV-2247, 2013 WL 6569703, at *3 (S.D.N.Y. Dec. 13, 2013) (alteration in original) (quoting *Jones v. Bock*, 549 U.S. 199, 203 (2007)), *adopted by* 2014 WL 351628 (S.D.N.Y. Jan. 31, 2014); *see also Tafari v. Hues*, 473 F.3d 440, 443 (2d Cir. 2007) (explaining that the PLRA was "designed to stem the tide of egregiously meritless lawsuits"). Toward that end, the PLRA contains a three strikes provision which states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).[2]

There is an exception to the three strikes rule where a prisoner is "under imminent danger of serious physical injury," *id.*, and such imminent danger "exist[ed] at the time the complaint [was] filed," *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002). Further, the complaint "must reveal a nexus between the imminent danger it alleges and the claims it asserts." *Pettus v. Morgenthau*, 554 F.3d 293, 298 (2d Cir. 2009). "Although the feared physical injury must be 'serious,' courts 'should not make an overly detailed inquiry into whether the allegations qualify for the exception.'" *Liner v. Fischer*, No. 11-CV-6711, 2012 WL 2847910, at *3 (S.D.N.Y. July

---

[2] The three strikes rule applies regardless of the fact that Plaintiff has already been granted IFP status. *See Jones*, 2013 WL 6569703, at *4 n.11 ("[T]he fact that [the plaintiff] has already been granted IFP status does not preclude revocation of that status and conditional dismissal of the action if he cannot subsequently pay the fee."); *Mason v. Nitti-Richmond*, No. 09-CV-7307, 2010 WL 2595108, at *3 (S.D.N.Y. June 25, 2010) (revoking IFP status and conditionally dismissing the complaint because of three strikes rule).

11, 2012) (alteration omitted) (quoting *Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010)), *adopted by* 2012 WL 4849130 (S.D.N.Y. Oct. 12, 2012).  Instead, a court should consider "(1) whether the imminent danger of serious physical injury . . . allege[d] is *fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury."  *Pettus*, 554 F.3d at 298–99.

### 2.  Strikes Under the PLRA

Defendants assert that the following four cases qualify as strikes sufficient to revoke Plaintiff's IFP status:  (1) *McDaniels v. Hodges*, No. 14-CV-4636 (D.S.C.); (2) *McDaniels v. Wright*, No. 14-CV-3728 (D.S.C.); (3) *McDaniels v. South Carolina*, No. 14-CV-4197 (D.S.C.); and (4) *McDaniels v. United States*, No. 11-CV-3128 (D.S.C.).  (*See* Defs.' Mem. 4–10.)  The Court addresses each case in turn.

Beginning with the earliest of the cases, *McDaniels v. United States*, Plaintiff filed an action against the United States in the U.S. District Court for the District of South Carolina in November 2011.  Pursuant to the recommendation of the magistrate judge, the district court dismissed the case on the basis of Plaintiff's failure to state a claim under the FTCA or *Bivens*, and, alternatively, on the ground that the claims Plaintiff asserted were duplicative of those Plaintiff alleged in another lawsuit.  *See McDaniels v. United States*, No. 11-CV-3128, 2012 WL 988029, at *2–3 (D.S.C. Feb. 27, 2012), *adopted by*, 2012 WL 993078 (D.S.C. Mar. 22, 2012).  As Plaintiff's case against the United States "was dismissed on the grounds that it . . . fail[ed] to state a claim upon which relief may be granted," it qualifies as a strike under the PLRA.  28 U.S.C. § 1915(g).  *See also Palmer v. N.Y. State Dep't of Corr.*, 342 F. App'x 654, 655 (2d Cir. 2009) ("[F]ailure to state a claim[] constitutes a strike under [§] 1915(g)."); *Jones*, 2013 WL 6569703, at *5 ("Because [the action] was dismissed for failure to state a claim, the dismissal

also unquestionably constitutes a strike . . . ."). Additionally, duplicative allegations are considered "frivolous" under § 1915 and similarly, grounds for a strike. *See Abreu v. Travers*, No. 15-CV-540, 2015 WL 10741194, at *4 (N.D.N.Y. Sept. 14, 2015) ("[T]he dismissal of an in forma pauperis complaint as duplicative may also arise within the ambit of the court's power to dismiss a complaint which is frivolous or malicious pursuant to [§] 1915(e)" (citing *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988))). Thus, the district court's dismissal of *McDaniels v. United States* is considered a strike under § 1915(g).

*McDaniels v. Wright*, filed in the U.S. District Court for the District of South Carolina in September 2014, was summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). *See McDaniels v. Wright*, No. 14-CV-3728, 2014 WL 11279579, at *2 (D.S.C. Sept. 30, 2014), *adopted by* 2015 WL 10710269 (D.S.C. Jan. 12, 2015).[3] "Dismissal of . . . actions pursuant to 28 U.S.C. § 1915(e)(2) constitutes [a] strike[] under § 1915(g)." *Harnett v. Tetreault*, No. 07-CV-952, 2009 WL 2971576, at *3 (N.D.N.Y. Sept. 11, 2009); *see also Burgess v. Conway*, 631 F. Supp. 2d 280, 282 (W.D.N.Y. 2009) (finding grounds for dismissal under § 1915(e)(2) "are fundamental defects that clearly fall within the scope of § 1915(g)"). The magistrate judge recommended, and the district court agreed, that Plaintiff's claim was barred by his failure to demonstrate the "favorable termination" requirement of *Heck v. Humphrey*, 512 U.S. 477 (1994).[4] *Wright*, 2014 WL 11279579, at *2. Dismissal of a claim pursuant to *Heck* "is properly

---

[3] "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . (B) the action or appeal– (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

[4] In *Heck v. Humphrey*, the Supreme Court held that a claim for monetary damages for a false arrest pursuant to § 1983 is not cognizable if the criminal charges or conviction resulting from that arrest have not been dismissed, vacated, or otherwise terminated in a manner favorable to the plaintiff. 512 U.S. 477, 487–88 (1994).

considered a strike under § 1915(g)." *Walton v. Alston*, No. 10-CV-6301, 2011 WL 873245, at *2 (S.D.N.Y. Feb. 15, 2011), *adopted by* 2011 WL 1045933 (S.D.N.Y. Mar. 21, 2011). Accordingly, *McDaniels v. Wright* constitutes Plaintiff's second strike.

Plaintiff filed *McDaniels v. South Carolina* in the U.S. District Court for the District of South Carolina in October 2014, approximately one month after filing the *Wright* case. As with *Wright*, the magistrate judge in *South Carolina* recommended that the case be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), and the district court adopted the recommendation. *See McDaniels v. South Carolina*, No. 14-CV-4197, 2014 WL 11279318, at *2–3 (D.S.C. Nov. 20, 2014), *adopted by* 2015 WL 10709885 (D.S.C. Jan. 12, 2015). The basis for the dismissal was again a failure to successfully challenge the conviction under *Heck*, and alternatively, the fact that the claims were duplicative of other actions filed by the Plaintiff. *Id.* As discussed above, a dismissal pursuant to *Heck* is grounds for a strike, *see Walton*, 2011 WL 873245, at *2, as is a finding that claims are duplicative of those a plaintiff alleged in another suit, *see Abreu*, 2015 WL 10741194, at *4. Therefore, the dismissal of *McDaniels v. South Carolina* is Plaintiff's third strike under § 1915(g).

With respect to *McDaniels v. Hodges*, filed shortly after *Wright* and *South Carolina* in December 2014, the U.S. District Court for the District of South Carolina again adopted the recommendation of the magistrate judge to summarily dismiss the case on the grounds that Plaintiff's complaint was barred by judicial immunity. *See McDaniels v. Hodges*, No. 14-CV-4636 (D.S.C. Apr. 27, 2015), *adopted by* No. 14-CV-4636 (D.S.C. June 4, 2015). While 28 U.S.C. § 1915 "does not explicitly categorize as frivolous a claim dismissed by reason of judicial immunity," the Second Circuit has recognized it as such. *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for

purposes of 28 U.S.C. § 1915(g).").  Accordingly, *McDaniels v. Hodges* qualifies as a fourth strike.

Plaintiff argues he has not accrued the four strikes Defendants identify, but that the cases Defendants cite are "factual innocence/malicious prosecution cases . . . under appeal" in South Carolina Supreme Court.  (*See* Pl.'s Opp'n 3.)  Plaintiff offers no evidence of pending appeals in the actions Defendants identify and the Court is aware of none.  Regardless, the Supreme Court has explicitly held that "[a] prior dismissal on a statutorily enumerated ground counts as a strike even if the dismissal is the subject of an appeal."  *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 (2015).  "The in forma pauperis statute repeatedly treats the trial and appellate stages of litigation as distinct."  *Id.* (italics omitted).  Despite any claims Plaintiff is pursuing in state court related to the alleged conduct, the dismissal of the four federal cases discussed above qualify as strikes under the PLRA.

### 3.  Imminent Danger Exception

Plaintiff contends that he "continues to suffer imminent danger," (Pl.'s Opp'n 3), thereby invoking the exception to the three strike policy, *see Malik*, 293 F.3d at 563.  In particular, Plaintiff claimed in his Complaint that his life was in danger because of his deviated septum.  However, Plaintiff's Complaint fails to demonstrate a "nexus between the imminent danger it alleges and the claims it asserts."  *Pettus*, 554 F.3d at 298.  By Plaintiff's own admission, he "has had a [d]eviated [s]eptum for over 20 years," well before he was incarcerated or under the care of Defendants.  (Compl. 2.)  Appended to Plaintiff's Complaint was a "Patient Plan," documenting Plaintiff's February 19, 2015 visit to Dr. Driver.  (*Id.* at 6–8.)  Dr. Driver's assessment does not indicate that Plaintiff faced imminent danger.  Rather, the assessment indicates a "moderate" nasal obstruction, describes Plaintiff's condition as "chronic," and orders that Plaintiff "return in

9

one month," indicating that any threat to Plaintiff's health was not imminent. (*Id.* at 6.) Plaintiff also submitted a March 30, 2015 response to an administrative claim filed with BOP. (*Id.* at 9.) The response indicates that Plaintiff was "medically evaluated and treated [for his] nasal condition on numerous occasions" and states that "[t]he Bureau of Prisons will continual [*sic*] to treat [Plaintiff] in accordance to [*sic*] Clinical Guidelines." (*Id.*) In short, the documentary evidence attached to Plaintiff's Complaint undercuts any claim that Plaintiff was in imminent danger at the time of the initiation of this Action.

And, in the face of these materials, Plaintiff offers nothing beyond conclusory claims that he was in imminent danger as a result of his deviated septum. In fact, the materials accompanying Plaintiff's Complaint demonstrate the past treatment of Plaintiff and BOP's commitment to future care and therefore undercut Plaintiff's allegations of imminent danger of serious injury. (*See* Compl. 9.) Moreover, the fact that BOP allowed Plaintiff to receive the surgery he sought further dilutes the unsubstantiated assertion that BOP has been indifferent to Plaintiff's medical condition or that Plaintiff's life is in danger. As a result, Plaintiff's claims fail to demonstrate a "nexus between the imminent danger [Plaintiff] alleges and the claims [Plaintiff] asserts," *Pettus*, 554 F.3d at 298.

Furthermore, as to the potential redress of Plaintiff's alleged injury, Plaintiff fails to indicate how a favorable outcome by this Court would address his claims. Plaintiff's Complaint seeks, in part, injunctive relief in the form of "surgery/pay[ment] for all medical equipment." (Compl. 4). In addition to injunctive relief, the Complaint seeks compensatory and punitive damages from each Defendant, as well as attorney's fees. (*See* Compl. 4).[5] As noted, Plaintiff

---

[5] "[A] pro se litigant who is not a lawyer is not entitled to attorney's fees." *Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (emphasis omitted).

already has had the surgical procedure he sought. It also is unclear how the monetary relief Plaintiff seeks would redress the alleged unlawful conduct described in Plaintiff's Complaint. Plaintiff is currently incarcerated and continues to be under the care of BOP and its medical staff. Thus, even reading Plaintiff's Complaint "to raise the strongest arguments [it] suggest[s]," *Johnson*, 2013 WL 5718474, at *2 (internal quotation marks omitted), the Court finds Plaintiff was not in imminent danger at the time he filed the Complaint.

### 4. Misrepresentations in Plaintiff's IFP Application

Defendants move, in the alternative, to dismiss the case or revoke Plaintiff's IFP status on the basis of misrepresentations in Plaintiff's IFP application. (*See* Defs.' Mot. 22–24.) Defendants allege that Plaintiff falsely declared under penalty of perjury that he had not received "more than $200 in the past 12 months," (*see* Dkt. No. 5 1–2), when in fact, Plaintiff received $250 to his prison trust fund account in the 12 months preceding his application for IFP status, (*see* Defs.' Mot. 23).

Revocation of IFP status or dismissal of a complaint is "appropriate where a plaintiff conceals or misrepresents his or her financial assets or history in bad faith to obtain in forma pauperis status." *Vann v. Comm'r of N.Y.C. Dep't of Corr.*, 496 F. App'x 113, 115 (2d Cir. 2012) (italics omitted). Defendants assert that Plaintiff's "IFP application in this action *appears* to have been an attempt to conceal the fact that he had a separate income stream," (Defs.' Mot. 24 (emphasis added)), but Defendants offer no evidence to indicate that Plaintiff acted in bad faith or intentionally mispresented his assets. While Plaintiff is undeniably "familiar[] with the in forma pauperis system and [has a] history of litigation," *Vann*, 496 F. App'x at 115 (italics omitted), dismissal of a case is a "harsh [] remedy despite a finding that the plaintiff intentionally misrepresented . . . assets," *Choi v. Chem. Bank*, 939 F. Supp. 304, 309 (S.D.N.Y. 1996). Even

11

in cases where the discrepancy in a plaintiff's assets and those reported in the IFP application were significant, courts have declined to revoke IFP status or dismiss the case on the basis of misrepresentation. *See Harris v. Cuyler*, 664 F.2d 388, 390 (3d Cir. 1981) (holding that although the plaintiff claimed he had less than $100 in his prison account and he actually had over $19,000, it was error for the district court to dismiss the case absent an explicit finding of bad faith, intentional misrepresentation, or omission by the plaintiff); *Choi*, 939 F. Supp. at 309 (declining to dismiss the action on grounds of misrepresentation despite the plaintiff's failure to disclose income from a business, his salary, real estate, automobiles, and approximately $93,000 in three different accounts); *Christensen v. Bristol-Myers Co.*, No. 86-CV-183, 1990 WL 6554, at *2 (S.D.N.Y. Jan. 22, 1990) (revoking IFP status due to finding that the plaintiff's misrepresentations on the application were intentional). Thus, the Court declines to find that Plaintiff's case should be dismissed or his IFP status revoked on the basis of the alleged misrepresentations in his IFP application.

### III.  Conclusion

As Plaintiff has accrued at least three strikes pursuant to § 1915(g) and fails to satisfy the imminent danger exception, Defendants' Motion to revoke Plaintiff's IFP status is granted. Accordingly, Plaintiff's Complaint is dismissed without prejudice. *See Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (affirming district court's dismissal of suit on the grounds that the plaintiff violated three strikes rule of the PLRA). To the extent Plaintiff wishes to file an Amended Complaint or make further submissions to the Court, Plaintiff must pay the appropriate filing fees within 30 days of the date of this Order.

The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 123.)

SO ORDERED.

Dated: November 29, 2016
White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE